**Leonard IMPELLIZERI and Frank Impellizeri, Appellants,**

**v.**

**URBAN RENEWAL AND COMMUNITY DE-VELOPMENT AGENCY, Appellee.**

Court of Appeals of Kentucky.

July 18, 1968.

Edwin I. Baer, Louisville, for appellants.

Robert W. Zollinger, Dennis J. Haugh, Louisville, for appellee.

EDWARD P. HILL, Judge.

Appellants filed this action in the Jefferson Circuit Court to require appellee (1) to approve plans submitted by appellants as "construction plans" required by a contract between appellants and appellee, and (2) to execute deeds of conveyance to appellants for two lots in Haymarket Center.

In December 1963, appellants submitted to appellee (hereinafter called "the agency") bids for the purchase of lots 1 and 5, Block 68, Haymarket Center. In January 1964, appellee accepted these bids subject to an invitation of additional competitive bids. In anticipation of the agency's approval of the sale of this property, appellants signed a written contract entitled "Bid Proposal and Contract for Disposition of Land for Private Development." This contract contained the following provisions relating to construction plans:

"3. (a) * * * As promptly as possible after execution of this Agreement, and, in any event, no later than January 15, 1965, and as a condition precedent to the obligation of the Agency to convey the Property to the Redeveloper [appellant], the Redeveloper shall submit to the Agency, for approval by the Agency, plans (herein called 'the Construction Plans') with respect to the improvements to be constructed by the Redeveloper on the Property, in sufficient completeness and detail to show that such improvements and the construction thereof will be in accordance with the provisions of the Redevelopment Plan. The Agency shall, if such Construction Plans conform to the provisions of the Redevelopment Plan, formally approve such Plans and no further filing by the Redeveloper or approval by the Agency thereof shall be required. Such Plans shall, in any event, be deemed approved unless formal rejection thereof by the Agency, in full or in part, setting forth in detail the reasons therefor, shall be made within 2 weeks after their submission to the Agency. * * *."

In March 1965, the agency unanimously adopted a resolution authorizing the chairman to execute contracts of sale and to execute and deliver general warranty deeds to appellants for lots 1 and 5.

Early in April, the architect representing appellants and other redevelopers in the Haymarket Center area submitted to the agency a preliminary plan for lots 1 through 5. Later at the regular April meeting of the agency, the following resolution was unanimously approved:

"4. *Plans for Hay Market—Corner of Floyd and Jefferson.* Motion was made by Mr. Schmied and seconded by Mr. Warders giving final approval of plans of the five individual stores and the area immediately north of these stores bounded by the alley, subject to receipt by this office of the final working drawings and specifications. Voting was unanimous."

The agency then signed the contract which appellants had signed in January (quoted above).

Apparently during these negotiations appellants sought the agency's approval of multi-store construction on their lots. The agency refused on the basis of the overall plan which called for one store per lot.

At its June meeting, the agency by unanimous vote rescinded its prior action relating to the sale of lots 1 and 5, stating as its reason that appellants had failed to comply with the contract provision that called for the submission of acceptable development plans (paragraph 3(a), supra). Appellants were informed of the agency's action by letter dated June 17, 1965.

The trial court found that the required construction plans had not been submitted. Appellants contend this was erroneous for two reasons: (1) The witnesses stated that "plans" were before the agency in April and that rejection letters were not sent until late in May, long after the two-week period which the contract allows for rejection. (2) The agency in its answer admitted appellants submitted plans and this is a judicial admission under CR 8.04.

In support of their contention that the plans were submitted to the agency in April, appellants rely on the testimony of their architect and the executive director of the agency. Both of these men testified that certain plans, entitled "preliminary"

plans, were before the agency at its April 19 meeting. It is evident from the record, however, that neither of these men considered these "preliminary" plans to be the "construction" plans required by paragraph 3(a) of the contract. The architect testified that he never submitted final working or final construction plans for lots 1 and 5. He did submit such plans for lots 2, 3, and 4 on behalf of other redevelopers. The plans for these three lots were accepted by the agency and show what the architect and the agency considered as being "construction" plans. Apparently the architect never submitted such plans on behalf of appellants, because after their request for a multi-store was denied, they told him not to do anything more until further notice.

The executive director of the agency testified that no final construction plans were ever submitted for lots 1 and 5. Also, the resolution at the April meeting expressly states that more plans were required.

Appellants contend that even if the preliminary plan was actually not a "construction" plan as required by the contract, appellee has made a judicial admission that these plans were sufficient. They contend this admission arises from the agency's answer to the complaint, in which the agency admits "plaintiff submitted construction plans to defendant."

The agency admitted in its answer that "plaintiff submitted construction plans to defendant." The agency (appellee) argues on this appeal that the pleader made a mistake by this admission in its pleading and relies upon CR 15.02 to extricate appellee from the awkward position thus created. It reasons that inasmuch as the evidence *for appellants (their own architect, Ward)* and the evidence of appellee (its executive director, Leeth) clearly show that no "construction plans" were ever submitted for lots 1 and 5, the pleader referred to the "preliminary plans." This reasoning finds support in other circumstances and events of the litigation. The greater portion of

the evidence relates to the nature and character of the plans submitted. The whole controversy between appellants and the agency revolved around the appellants' desire to construct more than one store per lot; whereas, the agency was just as determined that no more than one store per lot be constructed as was allowed for lots 2, 3, and 4, which were between appellants' lots 1 and 5.

■ At the trial court level, both parties considered the issue of the filing of proper "construction plans" as the real issue and as an issue properly joined by the pleadings. No contention was made in the trial court by appellants that appellee made a "judicial admission" in its answer. We are persuaded under the circumstances that the provisions of CR 15.02 excuse appellee from the consequences of a judicial admission.

We quote CR 15.02:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

The issue of whether "construction plans" were ever submitted was one of the

real issues of the case, and the evidence is overwhelming on both sides that no such plans were ever submitted. We quote from the evidence of appellants' architect, Jasper Ward:

"Q. These in no way could be considered final construction plans?

"A. No sir, they were not submitted as such.

"Q. Did you inform your client, the Impellizzeri's (sic), of the ruling of the Board of Commissioners?

"A. I asked Mr. Impellizzeri (sic) what I should do, and he said hold tight until I hear from him.

"Q. And what have you done on his behalf since then?

"A. Not to infer that I haven't been working on his behalf, but I have done nothing."

Mr. J. D. Leeth, executive director of the agency, was asked and answered as follows:

"Q. Are you aware of any final construction plans that were submitted by the Impellizzeri's (sic), to this Agency, showing a break down of each lot in more than one store, the final construction plans?

"A. No."

Appellants make a seemingly convincing argument that the agency failed to give notice of its "formal rejection" of their plans "within 2 weeks after their submission to the Agency" as the contract provided. This argument is no longer convincing, however, when it is realized that no plan was ever submitted that complied with the intent and purpose of the contract.

We think it clear from the evidence that in its plans the agency desired to eliminate congested marketplaces, sidewalk vending, and inadequate parking and loading facilities. These plans were fairly, courteously, and plainly made known to appellants, who sought to avoid compliance with those plans and to submit their own.

The point is made by appellants that at a meeting of the agency held April 19, 1965, their plans were accepted and approved by it. But a reading of the resolution clearly shows that "plans for five *individual* stores" were approved for the lots 1 through 5. Appellants at no time ever submitted plans for individual stores on their two lots, either "preliminary" or "construction."

Appellants not having complied with the conditions precedent to the right to acquire title, their cause must fail.

The judgment is affirmed.

MONTGOMERY, C. J., and MILLIKEN, OSBORNE, STEINFELD and PALMORE, JJ., concur.